ANNIE TREVORROW, ADMINISTRATRIX, ETC., v. JOHN TREVORROW.

*Possession of personal property under claim of ownership—Generally prima facie proof of such ownership.*

1. The possession of personal property under a claim of ownership is generally *prima facie* proof of such ownership.
2. The instructions of the court and verdict of the jury are held to have been warranted by the proofs in this case.

Error to Ontonagon. (Williams, J.) Argued February 9, 1887. Decided February 15, 1887.

Replevin. Defendant brings error. Affirmed. The facts are stated in the opinion.

*E. C. Chapin,* for appellant.

---

[1] How. Stat. § 1590.

*Chandler & Gray (Cahill & Ostrander,* of counsel), for plaintiff.

MORSE, J. The plaintiff's intestate, who was her husband, was killed in December, 1884, while at home on a visit.

From May, 1883, up to the time of his death, he had in his possession, claiming the same as his own, a team of horses, a lumber wagon, bob-sleigh, and harness. In the fall of 1884 he went to Calumet to work with said team, where they were at the time of his death. The defendant, the father of her husband, went after the team, and in January, 1885, wrote her from Bohemia as follows:

*"Dear Annie:* The team is in Baraga. Will be here to-morrow night. I will take care of them.
" Very affectionately,   JOHN TREVORROW."

The defendant brought the team home, and afterwards claimed to own them himself, and refused to deliver any of the property to her. She thereupon brought replevin and recovered in the circuit court for the county of Ontonagon.

It is complained that the court below erred in his charge upon the subject of possession.

The instruction was, in substance, that the possession of the property under a claim of ownership was presumptive evidence of the ownership,—not conclusive; but sufficient until proof was introduced to the contrary. The counsel for defendant admits this instruction to be correct as a general proposition, and as applied to the wagon, sleigh, and harness in this suit, but argues that it was erroneous as applied to the proofs in the case as to the team of horses.

The young Trevorrow being dead, the father, under the statute, was precluded from testifying to any fact equally within the knowledge of the deceased. This left a scarcity of proof upon the subject of the ownership of the team. The wife could testify only to the fact of possession by her husband, and his using the team as his own, and to sundry

,admissions of the father that the team was "John's," which he denied.

One J. T. Bond testified that during the years 1883 and 1884 he sold John Trevorrow, Jr., oats, feed, horse-shoes, and various other articles, to the amount of $420.24, which were charged to and paid for by him.

He also testified that the team in dispute came from Chicago; that the deceased went with him to Chicago, at the time the team was purchased, at the request of the witness, to help bring home other stock that he was going to buy there; that the defendant furnished the money, and the horses were bought for him; that the team was purchased May 8, 1883; that he never heard the deceased say who owned the team; that the deceased had nothing to do with selecting the team, or buying the same, beyond saying that he did not think the horses heavy enough to suit his father.

It also appeared from the defendant's testimony that, before the team was taken to Calumet, they were kept in the same barn with his other teams, but the oats were kept separate. After the team went to Calumet, defendant went to Chicago and bought another team.

The counsel for defendant contends that, the testimony showing the original purchase of the team to have been by the father, and no positive proof being introduced to show a sale by him to his son, the presumption of ownership at the time of the son's death would be in favor of the father as still continuing from the date of the original buying at Chicago, and that the son's possession, under the circumstances, was just as consistent with the idea that he had leased the team from his father as that he had bought them.

We do not think the court erred, under the circumstances of this case. The use by the son, for over a year, of the property as his own, his taking it to Calumet, and the father's letter to the wife in regard to it, certainly raised a strong presumption in favor of the ownership in the son, which, in

our opinion, was not materially weakened or rebutted by the fact that the father bought the team in Chicago a year and a. half before his son's death. The verdict was right upon the proofs, and the court's instructions were proper under the circumstances.

The judgment is affirmed.

The other Justices concurred.