B. AMUNDSON, Appellant, v. THE STANDARD PRINTING & MANUFACTURING COMPANY and THE DECORAH PRINTING COMPANY, VAN ALLENS & BOUGHTON, Intervenor.

**Sales: ACCEPTANCE: EVIDENCE.** Under a contract for the sale of a printing press, part payment to be made within a specified time after the press was put in running order and notes for the remainder were then to be executed, the fact that the cash payment was made before the stipulated time and that the notes were dated shortly after, was not conclusive of the buyer's intention to accept the press as a compliance with the contract, the other uncontradicted evidence being to the effect that acceptance was for some time thereafter declined, but finally the notes were actually executed.

**Conditional sale: TRANSFER OF TITLE.** Where property is sold under an agreement that title shall not pass until a mortgage upon the property is given to secure the purchase price, acceptance by the buyer will not of itself operate to pass the title; and delay in executing the mortgage because of a requirement that the seller repair the property, adjustment of freight charges, or absence of the buyer will not constitute a waiver of the condition precedent to the passing of title.

**Same: ESTOPPEL: PERFORMANCE BY ASSIGNEE.** Where property was sold under a contract reserving title until the execution of a mortgage by the buyer to secure the purchase price, by accepting the mortgage from an assignee of the buyer in possession of the property and in performance of the contract the seller is not estopped to deny title in the original buyer as against a landlord's lien for rent; as the passing of the title and the execution of the mortgage were parts of the same transaction.

**Chattel mortgages: LANDLORD'S LIEN: PRIORITY.** A purchase money mortgage given by a tenant as part of the transaction of purchase is a lien upon the property bought, prior to a lien of the landlord for rent.

*Appeal from Winnesheik District Court.*—HON. A. N. HOBSON, Judge.

TUESDAY, DECEMBER 15, 1908.

THE plaintiff leased to a copartnership, the Standard

Printing & Manufacturing Company, the first floor of what is known as the "Woolen Mill Building," in Decorah, for a period of three years beginning May 7, 1907, at the yearly rental of $200. The lessee assigned this lease to a corporation of the same name about a month after entering possession, the assignee assuming the payment of the rent. The assignee of the lease also exercised an option therein by which it secured the use of the second story of the building at a rental of $12.50 per month from May 7, 1902. In some way the Decorah Printing Company obtained possession. The action was begun May 7, 1903, to recover rent and enforce a lien therefor against a printing press hereafter mentioned, and on September 24th the following judgment was entered against the defendants. Van Allen & Boughton previously had intervened, alleging that the press levied on had been sold by them to the Standard Printing & Manufacturing Company October 5, 1901, on contract by the terms of which title was not to pass until paid for in money or notes secured by a mortgage on the press; that the press had been placed in the building, but as one of the wheels was defective there was delay in its acceptance, and the notes and mortgage securing them were not executed until June 21, 1902. Intervenor claims that this mortgage constitutes a lien thereon superior to the landlord's lien of plaintiff. This issue was determined in favor of intervener. The plaintiff appeals.—*Affirmed.*

*E. W. Cutting* and *A. F. Anundson,* for appellant.

*M. A. Harmon* and *Geo. W. Adams,* for appellee.

LADD, C. J.—One phase of this litigation has been disposed of in this court. See 129 Iowa, 200. The issue now to be decided is whether the landlord's lien of plaintiff is superior to the lien of intervener's mortgage. As

the former attached generally in May, 1901, it will prevail, unless the circumstances accompanying the sale of the printing press in controversy and the execution of the mortgage thereon were such that the latter should take priority over an existing lease. The Standard Printing & Manufacturing Company purchased the printing press October 30, 1901, and among the conditions of the contract between it and the intervener were the following:

It is also agreed that the deferred payments above mentioned shall be secured by first mortgage on the property herein contracted to be sold. It is further agreed, that the title of the said property shall remain in the seller until such mortgage is given, or until the purchase price and interest have been fully paid. And in case of any default in any of the terms of this contract, the sellers have the right to take immediate possession of said property. Upon the execution and delivery of the aforesaid mortgage, or the payment of the purchase price in cash, Van Allen & Boughton agree to execute and deliver a good and sufficient bill of sale of the above-described property.

The price was $3,500, of which $500 was to be paid "60 days after press is in running order," when notes for the balance in monthly payments were to be executed. The press was placed in the building in the fall, and on January 23, 1902, the vendee paid $250 thereon, and two days later transferred to intervener a draft of $200, which appears not to have been honored until July 2, 1902. Owing to a defect in a cogwheel the Standard Printing & Manufacturing Company declined to accept the press. The wheel was replaced by another, and then there was some delay in adjusting the payment of freight. One Steinort was president of both the Standard Printing & Manufacturing Company and the Decorah Printing Company, and, according to the testimony of the only witness called, refused to accept the press "until a few days

before the mortgage and notes were given." This happened
June 21, 1902, when the Decorah Printing Company, by
Steinort as its president, executed to intervener twenty-
eight notes of $100 each, and another of $92.40 dated
February 25, 1902, payable monthly, beginning September
1, 1902, and to secure their payment gave a mortgage on
the press. Because of the date of the notes and the pay-
ments mentioned, appellant argues that acceptance must
have occurred on February 25, 1902.

That the notes and payments were to be made "60
days after press is in running order" did not prohibit the
cash payment prior to that time, nor does such payment
alone establish the intention of the purchaser
to accept the press as in compliance with
vendor's agreement. On the contrary, the
evidence conclusively shows that Steinort, the president of
the company, was persistently declining to accept and
insisting on full performance by the intervener. How
the notes came to be dated back is not explained, nor is
this very material, for by the terms of the contract the
title was to remain in the sellers "until such mortgage is
given," not until the date of the notes. Undoubtedly,
payment of the $450 in January and the date of the notes
were circumstances tending to show acceptance, but they
are not alone sufficient to overcome the uncontradicted tes-
timony of Harmon that Steinort, president of the cor-
poration, declined to accept the press until shortly before
June 21, 1902, confirmed as this is by the execution of the
notes and mortgage on that day.

Moreover, even if it be conceded that the press was
accepted as early as February 25, 1902, this did not de-
prive the intervener of the ownership thereof, for, by the
terms of the contract, "the title to the prop-
erty shall remain in the seller until such
mortgage is given." Mere acceptance did
not operate to pass title, for the delivery as well as the

*Margin notes:*
1. SALES: acceptance: evidence.

2. CONDITIONAL SALE: transfer of title.

sale was conditional, and, until the condition with re-
spect to payment and security had been complied with,
title remained with the vendor. Certainly the latter has
done nothing to indicate the purpose of waiving this con-
dition. If there was delay it was due, to the necessity of
replacing a defective wheel with a perfect one, the adjust-
ment of freight charges, and the absence of the president
of the company. In these circumstances, the corporations
could not well be heard to complain of any want of vigi-
lance on intervener's part, much less plaintiff, who is not
shown to have suffered the slightest prejudice.

The original vendee, then, had not acquired title when
it delivered the press and all other property in the build-
ing to the Decorah Printing Company, a newly organized
corporation, about March 1, 1902. The
terms of this transfer are not disclosed by
the record, save as indicated by the possession
of the Decorah Printing Company. It
undertook to comply with the contract of the Standard
Printing & Manufacturing Company by the execution of
the notes and mortgages, in the latter warranting its title;
and appellant contends that in accepting its notes and the
mortgage, intervener is estopped from denying that title
passed to the former company and from it to the mort-
gagor. But there can be no estoppel from setting up the
truth unless this will work prejudice to some one, and
there is nothing in the record indicating that plaintiff
was misled by any change in this property. For all that
appears, the Decorah Printing Company may have ob-
tained the contract by assignment from the Standard
Printing & Manufacturing Company, in which event it
took the right to acquire title rather than title itself, which
did not pass to it until the execution of the notes and
mortgage. But there is no evidence of such assignment
save as delivery by the Standard Printing & Manufactur-

3. SAME:
estoppel:
performance
by assignee.

ing Company to the Decorah Printing Company indicated the transfer of whatever right or interest it might have had therein. Not only was the Decorah Printing Company in undisputed possession· on June 21, 1902, but by the execution of the mortgage it asserted its right to the property, and this amounted to *prima facie* proof of its ownership of all interest therein not retained by the intervener. Possession of personal property is *prima facie* evidence of ownership, good against everybody but the true owner. *Magee v. Scott,* 9 Cush. (Mass.) 148 (55 Am. Dec. 49); *Trevorrow v. Trevorrow,* 65 Mich. 234 (31 N. W. 908); *Cummins v. Friedman,* 65 Wis. 183 (26 N. W. 575, 56 Am. Rep. 628); *Tolerton & Stetson v. Petrie,* 12 S. D. 595 (82 N. W. 199); *Rogers v. Bates,* 1 Mich. (N. P.) 93; *Com. v. Finn,* 108 Mass. 466, 468. In the last case it is said to constitute, or rather answer for, a right of property. The presumption, then, in the absence of any evidence to the contrary, is that the Decorah Printing Company was owner of this property as against every one save the intervener. How it acquired the press is not very material. If the original vendee abandoned it, the title continued in the vendor, and must have been passed to the Decorah Printing Company as a part of the transaction in which the mortgage was executed to secure the purchase price. If the delivery of the press to the company executing the mortgage was subject to the conditions in the contract, then passing of title and execution of the mortgage were parts of the same transaction, as also they were if the contract was assigned and the mortgage executed in consummation of the sale to the vendee. In either event, acquiring ownership of the press and the execution of the mortgage were parts of one transaction, and ownership by the Decorah Printing Company was acquired subject to the mortgage.

A purchase-money mortgage, given by the tenant as

part of the transaction of purchase by him, is a lien on **4. CHATTEL MORT-** the property bought prior to the lien of the **GAGE: landlords lien:** landlord for rent. *Davis Gasoline Engine* **priority.** *Company v. McHugh,* 115 Iowa, 415; *Arnold v. Hewitt,* 128 Iowa, 671.

The judgment is *affirmed.*