FIRESTONE TIRE & RUBBER COMPANY, Appellant, v. FRANK W. ANDERSON, Appellee.

SALES:  Transfer of Title—Sales Under "Trade Acceptance." When it is shown that a purchase under "*trade acceptance*" means, by custom, the delivery of goods to the purchaser with an agreement that, before title shall pass, the purchaser will either (1) pay cash, or (2) sign and have accepted a draft for the purchase price, no title passes until such terms *are fully complied with.* Such a transaction does not constitute a "conditional sale," under Sec. 2905, Code, 1897.

REPLEVIN: Money Judgment in Lieu of Specific Article.  A claim for a money judgment for articles which the writ does not reach, may not be stricken out on the theory that such claim is an unallowable action for damages in replevin. (Sec. 4178, Code, 1897.)

*Appeal from Mills District Court.*—E. B. WOODRUFF, Judge.

DECEMBER 21, 1920.

ACTION in replevin resulted in a verdict for defendant, and judgment thereon. Plaintiff appeals.—*Reversed.*

*Montgomery, Hall & Young* and *W. S. Lewis,* for appellant.

*Genung & Genung,* for appellee.

LADD, J.—I. In the fall of 1918, one Galliher, by oral contract, bargained for the personal property in, and leased, defendant's garage. He went into possession, and, on February 18, 1919, ordered of plaintiff company 27 automobile casings and 18 tubes, at the total price of $645.10. About the 6th of March following, Galliher yielded possession of the garage, including the tubes

1. SALES: transfer of title: sales under "trade acceptance."

and all but 3 of the casings, which had come a few days before, to defendant. Whether, in so doing, Galliher informed defendant that these belonged to plaintiff, or directed him to invoice the tires and credit him with their value, is in dispute. Plaintiff contended that the proposed sale to Galliher was never completed; while defendant insists that the transaction amounted to a conditional sale. The trial court ruled that there was a conditional sale, and submitted the cause to the jury on that theory. We find no evidence in the record tending to sustain this view. If there was a completed sale, it was absolute. The order for the goods was obtained by one of the plaintiff's salesmen, being indorsed below the items and prices:

"Taken on trade acceptance basis with tax. H. A. Galliher, Purchaser."

This was forwarded to its branch house at Omaha, Nebraska, where its agent caused the goods to be shipped to the purchaser, and mailed the bill of lading, to which was attached an invoice of the goods and trade acceptance, and mailed to Galliher. Following is the form made use of:

"Trade Acceptance.
"No.......            ......191..$................
"......after date pay to the order of ourselves
................................... Dollars
in settlement of the purchase of goods as billed in
our invoice No....... dated...............
            "The Firestone Tire & Rubber Co.

            ....................
"To........................
....................."

The blanks were filled out, and stamped across the face:

"Accepted. Date.............(Date accepted) 191....
Payable at (designate bank); location of bank (place of payment); signature (signature of acceptor)."

Accompanying this was a letter, instructing Galliher that, "upon the receipt of our invoice and bill of lading as evidence of shipment, you are to sign the trade acceptance made payable to your bank on May 10, 1919, and return to this branch at

once.   The amount of trade acceptance will be net, all dis-
counts having been deducted.''   The acceptance was neither
signed nor returned, nor cash remitted instead.   Plaintiff's
agent testified that the forms used were those approved by the
Federal reserve banks; that he knew what is meant by trade
acceptance in the automobile trade.

''A trade acceptance terms are an order, a contract or an
arrangement whereby the purchaser agrees to sign a draft pay-
able at a certain time on receipt of B/L, providing that the goods
were shipped, the signing of which draft constitutes the chang-
ing of ownership, and acknowledges the entire transaction as
correct; or, if he prefers otherwise, he may pay the cash, which
will answer the same purpose.   Q.   In the automobile trade,
what is the custom as to the ownership of goods shipped on trade
acceptance?   A.   The ownership is passed at the time the trade
acceptance is signed, or at the time payment is made, instead
of the acceptance being signed.''

A trade acceptance with the B/L is forwarded immediately
after the goods are shipped, but the sale is not effected until
the goods are paid for, or the draft on the local bank is accepted
by the purchaser.   Such a sale, when made, is without condi-
tion; but until payment, either in cash or acceptance required,
the contract was conditional: that is, the sale was subject to a
condition precedent, namely, the signing of the trade acceptance,
or payment to the seller in cash.   The distinction between a con-
ditional contract of sale and a contract of conditional sale is
pointed out in 1 Mechem on Sales, Section 584:

''The great weight of authority is to the effect that agree-
ments of the kind now under consideration, by whatever name
called, are contracts of sale, subject to a condition precedent,
namely, the payment of the price.   In other words, they are
conditional contracts to sell, and are most appropriately de-
scribed as conditional contracts of sale, to distinguish them from
the true conditional sale, which is a sale subject to a condition
subsequent; though the shorter term, 'conditional sale,' seems
to be so firmly fixed in our legal nomenclature that it is not
likely to be abandoned.''

Later on (Section 585), the author observes that:

"Until full payment of the price, no title passes to the prospective purchaser, unless this condition precedent of payment is waived."

To constitute a conditional sale, within the terms of the statute, there must be a delivery of possession to the purchaser, with the intention of passing immediate ownership, subject only to the reservation of title in the seller, as security for the purchase money. *Donnelly v. Mitchell*, 119 Iowa 432; *Amundson v. Standard Ptg. & Mfg. Co.*, 140 Iowa 464; *Budlong v. Cottrell*, 64 Iowa 234; *Gaar, Scott & Co. v. Nichols*, 115 Iowa 223; *Davis Gas. Eng. Works Co. v. McHugh*, 115 Iowa 415. The proposed sale was not effected, and title did not pass to Galliher, as he had none to pass, nor to defendant.

II. The petition particularly described the several casings and tubes, and prayed that plaintiff be put in possession of "said above-described personal property, as set forth in Exhibit I; or, if the same cannot be found, or any item 2. REPLEVIN: money judgment in lieu or part thereof cannot be found, that plaintiff of specific article. have and recover of and from defendant judgment for each and every item of property in the sum of $645.10, with interest." On motion of defendant's attorney, the court struck therefrom "any claim for damages by reason of the goods sold, it being a misjoinder in a replevin action." The record does not disclose what became of about two thirds of the goods, and we know of no reason for denying plaintiff recovery of those not found, or their value, under Section 4178 of the Code, which provides that:

"If a party found to be entitled to property be not already in possession thereof by delivery under the provisions of this chapter or otherwise, he may at his option have an execution for the delivery of the specific property, or for the value thereof as determined by the jury, and if any article of the property cannot be obtained on execution, he may take the remainder, with the value of the missing articles."

The ruling was erroneous.—*Reversed.*

WEAVER, C. J., STEVENS and ARTHUR, JJ., concur.