INDUSTRIAL CREDIT COMPANY, a corporation, appellee, v. HARGA-
DON EQUIPMENT COMPANY, appellant, JAMES TALCOTT, INC.,
et al., intervenor-appellants.

No. 50714.

(Reported in 119 N.W.2d 238)

758

JANUARY 15, 1963.

Whicher, Davis & Yaneff, of Sioux City, for appellant James Talcott, Inc.

Pizey, Sears & DeWitt, of Sioux City, for appellant M. C. Sanderson.

Edward E. Baron, of Sioux City, for appellee.

STUART, J.—A dealer discounted a conditional sales contract to a finance company. The property was repossessed and resold by the dealer. The second conditional sales contract was discounted to a second finance company. The dealer did not pay off the obligation to the first company with the proceeds. As a result, one of two finance companies will be defrauded out of several thousand dollars. There are several parties involved in the transactions relevant to this appeal and for clarity and brevity we will refer to them as "Industrial", "Talcott", "Hargadon", "Anderson" and "Sanderson".

On August 6, 1959, Hargadon, an equipment dealer, sold a motor scraper to Anderson on a conditional sales contract. Hargadon assigned the contract to Industrial, in which assign-

ment Hargadon guaranteed "full performance of said contract and prompt payment of all sums provided therein." The contract and the attached assignment were filed at the recorder's office in Woodbury County, but only the contract to Anderson was indexed. No fee was paid to index the assignment.

In the spring of 1960 the scraper was repossessed on a voluntary basis and returned to Hargadon. Parties agree this extinguished the Anderson contract except for Hargadon's guaranty. Industrial left the machine with Hargadon for resale and carried the item on its books as a repossessed item and charged Hargadon on open account for the balance due on the guaranty. The scraper remained on Hargadon's lot from March 1960 to August 1960. During this time Hargadon made three payments to Industrial.

There is a sharp conflict in the testimony as to the events which took place in August of 1960. It is clear, however, that Sanderson took possession of the scraper and that his signature appears on a note and conditional sales contract to Hargadon which were assigned to Talcott. While there is a dispute as to whether the sale to Sanderson was bona fide, there is no assertion that Talcott had any knowledge or notice of any irregularities. The contract was filed, but the assignment was not indexed. Hargadon did not pay off Industrial with the proceeds from the second assignment.

On September 6, 1960, Hargadon and Industrial agreed on the amount due Industrial under the old Anderson contract. Industrial gave Hargadon a check for $19,161 which was endorsed right back to settle the account. Title of the scraper was given to Hargadon and a note and chattel mortgage on the scraper were executed in favor of Industrial by Hargadon. Industrial did not have actual knowledge of the August transaction at the time, although it had been told Sanderson had possession of the scraper on trial. In December the scraper was returned to Hargadon's possession.

On January 18, 1961, Hargadon was in default on the obligation to Industrial and they demanded either payment or possession of the machine. At that time Industrial first learned of the contract with Sanderson and the assignment to Talcott.

A written statement was obtained from Sanderson. On January 20, 1961, the replevin action was commenced against Hargadon and the machine delivered into Industrial's possession. Both Talcott and Sanderson intervened claiming the right to possession.

The trial court found for Industrial and Talcott appealed making the following assignments of error.

"1. The Trial Court erred in holding that Hargadon acquired no interest in the equipment after the first sale.

"2. The Trial Court erred in not holding that the agreement between Industrial and Hargadon after the repossession constituted a conditional sale or contract that should have been in writing and recorded in order to be valid as against Talcott.

"3. The Trial Court erred in not holding that when Industrial clothed Hargadon with the apparent title and authorized Hargadon to resell the scraper Talcott, as a purchaser of the second conditional sales contract, without notice of the Industrial-Hargadon agreement, should prevail as against Industrial.

"4. The Trial Court erred in holding that the conditional sales contract assigned to Talcott was a fraudulent and fictitious document and because of Hargadon's fraud Talcott acquired no rights to the scraper covered by the contract.

"5. The Trial Court erred in failing to admit into evidence, and to consider, the documentary evidence offered by Talcott."

I. The first two assigned errors may be discussed in the same division of this opinion as Hargadon's interest in the scraper, if any, would be under an oral conditional sales contract. Since there is no factual dispute until Mr. Sanderson enters the picture in August, the determination of the nature of the relationship between Hargadon and Industrial at that time becomes one of law rather than fact.

Talcott claims the arrangements under which Industrial left possession of the scraper with Hargadon amounted to an oral conditional sales contract and is therefore invalid as to Talcott because it was not recorded or filed as required by section 556.4 of the 1958 Code of Iowa which states:

"No sale, contract, or lease, wherein the transfer of title or

ownership of personal property is made to depend upon any condition, shall be valid against any creditor or purchaser of the vendee or lessee in actual possession obtained in pursuance thereof, without notice, unless the same. be in writing, executed by the vendor and vendee, or by the lessor and lessee, acknowledged by the vendor or vendee, or by the lessor or lessee, and such instrument or a true copy thereof is duly recorded by, or filed and deposited with, the recorder of deeds of the county where the vendee or lessee resides if he be a resident of this state at the time of the execution of the instrument; but if he be not such a resident, then of the county where the property is situated at that time."

Industrial claims that the arrangement was only a bailment for the purpose of sale and that the guaranty on the Anderson contract was a separate agreement.

█ While the trial court did not pass upon this question specifically, it held Hargadon never acquired any interest in the scraper after repossession and therefore had nothing to sell. We hold that the transaction amounted to a conditional sale and was subject to the requirements of the recording act.

█ A conditional sales contract is actually a form of bailment and it is often difficult to distinguish it from a bailment for the purpose of sale. However, our recording statute 556.4 of the 1958 Code of Iowa makes the distinction an important one. If the transaction constitutes an oral conditional sales contract subject to the recording statutes, Talcott may stand upon the positive statutory declaration that Industrial's prior unrecorded contract is invalid against a purchaser who takes a conditional sales contract regular upon its face in good faith for value without notice. State Savings Bank v. Universal Credit Co., 233 Iowa 247, 254, 8 N.W.2d 719, 724.

If the transaction is a bailment for the purpose of sale, the case must be determined upon the broad ground whether Industrial clothed the dealer with the apparent title or with a power of sale, which was fairly calculated to deceive or mislead the plaintiff as a reasonably careful and prudent person and as an innocent purchaser in good faith, and whether pursuant thereto the plaintiff did so purchase the second conditional sales

contract. Iowa Guarantee Mortgage Corp. v. Universal Credit Co., 217 Iowa 1243, 1245, 253 N.W. 23, 24. .

"The main distinction, or the most approved test, has been said to be that in a conditional sale there is a promise or agreement to pay, while in a bailment there is no such promise or agreement, but the bailee may relieve himself of further liability by surrendering the property." 8 C. J. S. 328, Bailments, section 3(2); Bentley & Olmstead v. Snyder & Son, 101 Iowa 1, 69 N.W. 1023, 1025; Hansen v. Kuhn, 226 Iowa 794, 285 N.W. 249; Hull-Dobbs Motor Co. v. Associates Discount Corp., 241 Iowa 1365, 1369, 44 N.W.2d 403.

The court has also said: "To constitute a conditional sale, within the terms of the statute, there must be a delivery of possession to the purchaser, with the intention of passing immediate ownership, subject only to the reservation of title in the seller, as security for the purchase money." Firestone Tire & Rubber Co. v. Anderson, 190 Iowa 439, 442, 180 N.W. 273, 274.

See also Greenlease-Lied Motors v. Sadler, 216 Iowa 302, 249 N.W. 383; Hansen v. Kuhn and Hull-Dobbs Motor Co. v. Associates Discount Corp., both supra.

The evidence meets the tests of a conditional sales contract. After the Anderson contract was extinquished and Industrial became entitled to possession as well as title, it left possession in Hargadon with the understanding that it would transfer title to Hargadon upon the payment of the balance due on the Anderson contract. Industrial's only interest in retaining title was to secure the payment agreed upon. Mr. Larson's cross-examination makes it clear how Industrial viewed the transaction. He testified:

"Q. Mr. Larson, between the time in March of 1960 and your taking the chattel mortgage, Exhibit 2, in other words, after the machinery was back in the possession of Hargadon, was it contemplated that you would sell the machinery or transfer the title to it to Hargadon on completion of the payments? A. We didn't expect that it would go that long, Mr. Davis.

"Q. In other words, you thought they would make other

arrangements to finance it before then and protect—then transfer the title to them? A. That's right."

On further cross-examination he testified:

"Q. Now, Mr. Larson, if I understood you correctly when Mr. Davis was questioning you, I understood you to say that you demanded payment as distinguished from possession? A. I demanded the full balance, Mr. Huff.

"Q. That is what you demanded of Hargadon? A. That is correct. I didn't ask for any curtailment, I asked for the full balance.

"Q. And you didn't ask for the machine, you asked for the money, is that right? A. We asked for the money, and if the money was not forthcoming then I wanted surrender of the equipment."

Not only does this indicate that Industrial's interest was limited to the amount of the account, it shows clearly that Industrial expected Hargadon to refinance the scraper shortly after March 1960 and pay it off. This is inconsistent with a bailment for sale as is the fact that Hargadon made three payments reducing the amount due Industrial. The fact title was transferred later and a chattel mortgage taken for the unpaid balance confirms the nature of this transaction.

The evidence does not support Industrial's claim of a bailment for the purpose of sale. Industrial claims two separate agreements, the guaranty to pay off the balance on the Anderson contract and a separate bailment for sale. The two transactions are, however, tied together by the interest of both parties in the scraper and the proceeds therefrom, in case of sale. Under a bailment arrangement Hargadon could have relieved itself of liability by returning the equipment and Industrial could then have sold or given it away as it desired. Such was not the case here. Hargadon remained liable for the unpaid balance on the Anderson contract and Industrial was obligated to apply the proceeds from any sale against this balance. It is impossible to separate these two transactions.

There is nothing in the evidence to support Industrial's argument that they had reserved the right to take possession

at any time. There is abundant evidence in the record, supplied by Industrial, that its interest was in the balance due on the Anderson contract, not the machine. No attempt was made to take possession until default occurred on the chattel mortgage executed on September 8, 1960.

We hold that a transaction in which the assignment of a conditional sales contract is not properly filed or recorded and the assignee, after a voluntary repossession, places the property in the hands of the assignor dealer under an agreement to deliver title upon the payment of the balance due assignee under the guaranty in the assignment constitutes an oral conditional sales contract, subject to the terms of section 556.4 of the 1958 Code of Iowa and is invalid as to subsequent purchasers without notice.

II. We must now determine whether Talcott is a purchaser without notice and therefore entitled to the protection of the recording statute.

The trial court found the Sanderson contract was made August 24, 1960, and that the assignment was made "as it appears on its face" on August 4, 1960, or 20 days before the contract was executed. The trial court also found the Sanderson contract was fictitious and held that Talcott was not an innocent holder in due course without notice. We agree the evidence supports a finding that on the face there is a discrepancy between the date of the assignment and the note and contract. The evidence also supports a finding that the contract was fictitious. We do not agree that these facts justify the conclusion that Talcott was not a holder in due course without notice.

The record is uncontradicted and shows the assignment dated August 4, 1960, and the note and contract dated August 24, 1960. This is explained as a typographical error which is undoubtedly true. Hargadon would have gained no advantage whatsoever by predating the assignment. No other explanation is offered by Industrial. The evidence does not support the finding that the assignment was actually made on August 4, 1960, but does support the discrepancy in dates as bearing upon the question of whether the instruments were regular on the face.

Sanderson's testimony concerning his alleged contract is entirely inconsistent with the written statements given Industrial's representatives and the testimony of Industrial's witness as to admissions made in a meeting in Omaha. A representative of Talcott who attended the Omaha meeting testified at the trial in rebuttal but did not deny the accuracy of the testimony concerning Sanderson's admissions. The evidence was sufficient to support trial court's finding of the fictitious nature of the contract.

In view of the entire record, however, these findings do not support the conclusion that Talcott was not a holder in due course without notice. We say in State Savings Bank v. Universal Credit Co., 233 Iowa 247, 254, 8 N.W.2d 719, 724:

"An assignee who takes a conditional sales contract, regular upon its face, in good faith and for value and without notice of its accommodation character, is a purchaser as against a prior unrecorded conditional sales contract of which he is without notice and which is, therefore, invalid."

By substituting the broader phrase "fictitious" for "accommodation" in the above quote, we have the rule of law applicable to these facts. The discrepancy in the dates between the assignment and the contract and note is relevant to the determination of whether the instrument is regular on its face. The note itself is regular on its face and only when considered in connection with assignment does any discrepancy arise. Assuming without deciding that this does make an irregularity sufficient to put Talcott on notice, the law requires only such investigation as will alleviate the irregularity.

"Where a certain irregularity is suggested by a particular defect of the paper, or where a purchaser has knowledge of some suspicious circumstance attending its negotiation so that it becomes his duty to make inquiry, he is bound to make only the inquiries calculated to relieve the paper of the suspicions suggested by this particular circumstance, and is not bound to investigate the whole field of possible defenses not suggested by the irregularity." 10 C. J. S. 821, Bills and Notes, section 324(c).

"A purchaser of a negotiable instrument is chargeable with notice of every fact shown on the face or the back of the instru-

ment. The same standard for measuring the good or bad faith of the purchaser applies when the purchaser acts on evidence furnished by the face of the paper as when he is governed by facts aliunde the paper; so, where the face of the paper discloses suspicious circumstances or marks of infirmity sufficient to put the purchaser on inquiry, he is charged with notice of what the inquiry would have revealed." 10 C. J. S. 835, Bills. and Notes, section 334.

This court in Commercial Credit Corp. v. Interstate Finance Corp., 236 Iowa 459, 465, 18 N.W.2d 178, 181, 159 A. L. R. 663, states:

"It may be conceded that the law is that, if the company, before making the loan, was in possession of such facts as would put a reasonably prudent man upon inquiry, it would be held to be bound by whatever such inquiry would have disclosed." (Citations)

In this case there were no suspicious circumstances other than the conflicting dates. Talcott had bought conditional sales contracts from Hargadon on previous occasions. It had a current loan with Sanderson and knew he was in the construction business. Even so, before approving the loan it demanded and received a financial statement from Sanderson which was in good order. The assignment executed by Hargadon contained statements confirming the validity of the instrument. A visual investigation would have revealed Hargadon's possession of the scraper. There was nothing in the surrounding circumstances to arouse Talcott's suspicions.

If the conflicting dates themselves were sufficient to create a suspicion, the only inquiry necessary is that which would relieve the paper of suspicions created by such irregularities. Hargadon would have informed Talcott that it was a typographical error. This is the logical explanation. The investigation would not have revealed anything which tended to show the fictitious nature of the contract. Talcott is not required to investigate the whole field of possible defenses.

Under these particular facts, the discrepancy in the dates was. not such a circumstance as would alert Talcott to the possi-

bility that the contract might not be genuine. Talcott exercised good faith in the purchase of the conditional sales contract. We hold that Talcott was a bona fide purchaser for value without notice of the fictitious nature of the contract and without notice of the prior unrecorded contract between Industrial and Hargadon and is entitled to the protection of the recording statute.

Industrial cites cases from several foreign jurisdictions which decided similar cases on the issues of whether the vendor clothed the dealer with apparent title and authority to sell and the doctrine that between two innocent parties the one who makes the fraud possible must bear the loss. These cases were also cited in the case of State Savings Bank v. Universal Credit Co., supra, in which the court said at page 252 of 233 Iowa: "None of these cases turns upon the statutes which invalidate the conditions of prior secret sales."

III. Even though these cases are therefore not applicable here and it is unnecessary to rule upon Talcott's third assigned error which alleges it was entitled to prevail upon this principle, we feel that this decision is consistent with the general principle which determines which of two innocent persons must bear the loss. Assuming that Sanderson actually thought the papers he signed when he took possession of the scraper were receipts for the taking of the machine, the fact remains that he would have had no occasion to sign anything had Hargadon not had possession. Talcott had no means of protecting itself, but Industrial could have insisted on a conditional sales contract or chattel mortgage in March just as easily as they did in September and been afforded complete protection. Had they done so this case probably would not have arisen. Industrial not Talcott made the fraud possible.

In view of our decision we need not consider Talcott's fifth assignment of error dealing with the trial court's exclusion of certain evidence.

 The scraper had been sold at time of trial and the trial court fixed its value at $17,400. Talcott in its petition of intervention asked for damages from the wrongful detention in the amount of $6000 but offered no proof on this issue. Talcott has

been deprived of possession since January 20, 1961, the date the replevin action was commenced. Talcott is entitled to judgment against Industrial in the amount of $17,400 with interest from January 20, 1961. Harlan v. Mennenga, 241 Iowa 52, 40 N.W.2d 48. The costs are assessed against Industrial.

The case is reversed and remanded with direction to the trial court to enter judgment in conformity with this opinion.— Reversed and remanded.

All JUSTICES concur.