# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 145

OCTOBER TERM, A.D. 2015

November 16, 2015

CONTINENTAL WESTERN
INSURANCE COMPANY,

Appellant
(Plaintiff),

v.

JAMES BLACK, JJ BUGS, LTD.,
ANDREW GUSTAFSON, individually,
and as Personal Representative of
Stephanie Gustafson, CHARLES ADSIT,
JOE PATTERSON, and MIA
PATTERSON,

Appellees
(Defendants).

S-15-0068

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
> Marianne LaBorde and David C. Fawley of Montgomery Amatuzio Dusbabek Chase, LLP, Denver, CO. Argument by Mr. Fawley.

*Representing Appellees:*
> Cameron S. Walker of Schwartz, Bon, Walker & Studer, LLC, Casper, WY for Appellees James Black and JJ Bugs, Ltd.; Thomas G. Tasker of Hillyard Wahlberg Kudla Sloane & Woodruff, Denver, CO; and Patrick J. DiBenedetto of Metier Law Firm LLC, Fort Collins, CO for Appellee Andrew Gustafson; Richard Wolf of Wolf, Tiedeken Woodard, P.C., Cheyenne, WY for Appellee Charles Adsit; and Donald J. Sullivan of Sullivan Law Offices, P.C., Cheyenne, WY for Appellees Joe and Mia Patterson; and Philip White Jr., Laramie, WY for Appellees Gustafson, Adsit, and Pattersons. Argument by Messers. Walker and White.

*Before BURKE, C.J., HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1]   Keizer Trailer Sales, Inc. (Keizer), who is insured by Continental Western Insurance Company (CWIC), sold three refrigerated trailers to James Black.  Mr. Black took immediate possession of the trailers, but the installment purchase agreement pursuant to which he bought the trailers specified that Keizer would remain the owner of the trailers until the purchase price was paid in full.  Mr. Black was subsequently in an accident with one of the trailers while traveling on Interstate 80 in Wyoming, and wrongful death and personal injury actions were filed against him and his business.

[¶2]   CWIC was notified of potential claims against the policies it issued Keizer on the trailer involved in the accident.  CWIC thereafter filed a complaint for declaratory judgment in the district court for the First Judicial District, seeking a declaration that the policies issued to Keizer do not provide coverage for the claims arising from Mr. Black's accident.  The district court ruled against CWIC and found that Mr. Black was insured under the policies' omnibus clauses because he was driving a vehicle owned by Keizer with Keizer's permission.  We affirm.

## ISSUES

[¶3]   CWIC states the issues on appeal as follows:

> 1.   Did the trial court err in finding that Keizer Trailer Sales, Inc. was the owner of the trailer for purposes of liability insurance despite the fact that James Black had purchased it under a conditional sales agreement?

> 2.   Did the trial court err in finding that James Black was operating the trailer on the day of the accident pursuant to Keizer Trailer Sales, Inc.'s permission?

## FACTS

[¶4]   On December 27, 2010, James Black purchased three refrigerated trailers from Keizer Trailer Sales, Inc. (Keizer).  The purchase was made pursuant to an Offer of Purchase Agreement (Purchase Agreement) prepared by Keizer.  On its front side, the Purchase Agreement set forth the total price of the trailers and specified the following terms (with our emphasis added):

> These trailers are being purchased through a "Lease to Purchase" and ***[Keizer] will remain the owner of the equipment until the loan is paid in full***.

1

> Buyer agrees to the payment schedule on the Promissory Note-Guaranty dated 12/27/2010.
>
> Buyer agrees to provide insurance showing [Keizer] as both the loss payee and additional insured.
>
> Buyer agrees that if he becomes more than two payments past due the trailers will be returned to one of our locations and all monies paid to date will be forfeited.
>
> Buyer understands the trailers are being sold on this date with a current DOT inspection and that the buyer will be responsible for getting a new DOT inspection every 12 months from this day forward.

[¶5]    On the Purchase Agreement's reverse side, under the paragraph entitled "Title-Risk of Loss," the Purchase Agreement again specified that: "All products sold to Buyer hereunder shall remain the property of Seller until fully paid for in cash." Mr. Black also signed a separate Promissory Note-Guaranty, promising to pay to Keizer the sum of $81,946.64, with interest at the rate of 14% per annum, in thirty-six monthly installments beginning on January 26, 2011.

[¶6]    Mr. Black took possession of the three trailers on December 27, 2010, but they remained titled and registered in Keizer's name. Keizer paid for and supplied license plates for the trailers throughout the duration of Mr. Black's possession. Keizer also continued to maintain and pay for two insurance policies on the three trailers, a commercial policy and an umbrella policy, both issued by Continental Western Insurance Company (CWIC). Keizer's commercial policy with CWIC lists the three trailers under the policy's "Schedule of Covered Autos You Own," and the commercial policy defines an insured as:

> a.    You [Keizer] for any covered "auto."
> b.    Anyone else while using with your permission a covered "auto" you own, hire or borrow * * * .

[¶7]    The commercial policy defines "auto" as:

> 1.    A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or
> 2.    Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

[¶8]    The commercial policy then defines "trailer" to mean, in relevant part, "a semitrailer or a dolly used to convert a semitrailer into a trailer." The umbrella policy

2

uses substantially similar language to define an insured and auto and thereby operates to increase the liability coverage and provide that increased coverage under the same terms as the commercial policy.

[¶9]   On April 29, 2012, Mr. Black was operating a tractor pulling one of the Keizer trailers and was involved in an accident on Interstate 80 just east of Cheyenne, Wyoming. The accident resulted in multiple injuries and one fatality.  Following the accident, wrongful death and negligence claims were filed against Mr. Black and his business, and CWIC was notified of potential claims against the commercial and umbrella policies it issued Keizer on the trailer involved in the accident.

[¶10]  On September 18, 2013, CWIC filed a complaint for declaratory judgment seeking a declaration that the commercial and umbrella policies issued to Keizer do not provide coverage for the claims arising from Mr. Black's accident.  The defendants named in CWIC's declaratory judgment complaint included Mr. Black and his business and the plaintiffs in the underlying wrongful death and negligence actions.

[¶11] CWIC filed a motion for summary judgment, and Defendants filed their oppositions and requested that the court issue a judgment declaring that the CWIC policies provide coverage for the claims arising out of Mr. Black's accident.   On November 25, 2014, the district court issued a decision letter denying CWIC's motion for summary judgment and directing entry of an order granting Defendants summary judgment.  The district court noted the parties' agreement that there were no disputed issues of fact and then ruled (citations omitted):

> Under the express terms of the Policy, coverage extends to Black if Keizer was the owner of the trailer at the time of the accident, and if Keizer gave Black permission to use the trailer.  Conversely, coverage does not extend to Black if either one of these questions is answered in the negative.  Because no party disputes the facts in this matter, the question of ownership is also a question of law.
>
> The answer to the question of whether Black had possession of and was using the trailer with Keizer's permission flows directly from the answer to the ownership question.  Keizer and Black entered into a sales agreement and there is no indication that Black unlawfully possessed the trailer at the time of the accident.  Therefore, if Keizer retained ownership of the trailer, Black is patently using the trailer with Keizer's permission.  If, however, Keizer divested its ownership of the trailer, Keizer could not have granted Black permission to use the trailer.  Thus, the Court need only analyze the question of ownership.

The terms of the Offer of Purchase Agreement, which Keizer drafted and entered into with Black, are unambiguous and set forth only one meaning—that Keizer was to "remain the owner of the equipment until the loan was paid in full." Therefore, the plain language of the contract establishes Keizer's express intent to retain ownership, not just retain title for the purpose of maintaining any formal or informal security interest in the trailer. If Keizer only intended to retain a security interest, it could have drafted its contract using different terms or remained silent on the issue of ownership if it felt the law supplied the answer to the ownership question. It did not. Keizer is bound by the terms of its own drafting, and in doing so chose to maintain ownership, and was the owner of the trailer at the time of the accident.

\* \* \* \*

Not only did Keizer maintain the trailer on the Policy listing it on the Policy's Schedule of Covered Autos You Own, but in exchange for premium payments, CWIC agreed to insure the trailers listed on the Policy. Therefore, the intent of the parties to the insurance contracts at issue here was to insure the trailer involved in the accident. While the insurance contract does not, of and by itself, create an actual or legal ownership interest in the trailer in Keizer, it does create a contractual insurable interest in Keizer and an obligation for CWIC to provide insurance coverage.

Furthermore, Black, by virtue of Keizer's ownership of the trailer had Keizer's permission to use the trailer. Because Keizer owned the trailer under the express terms of the Offer of Purchase Agreement and gave Black permission to use it, the coverage of the Policy extends to Black. Also, since Keizer contracted for coverage, listing the trailer on the CWIC Policy Schedule of Covered Autos You Own, CWIC's coverage extends to Black in regard to the April 29, 2012, accident.

[¶12] On January 21, 2015, the district court entered its Order Granting Summary Judgment. CWIC thereafter filed its timely notice of appeal to this Court.

**STANDARD OF REVIEW**

[¶13] In a declaratory judgment action, we review an entry of summary judgment as follows:

4

The district court decided the matter by grant of summary judgment, which we have held "may be an appropriate resolution of a declaratory judgment action." *Cheyenne Newspapers, Inc. v. Bldg. Code Bd. of Appeals of City of Cheyenne*, 2010 WY 2, ¶ 8, 222 P.3d 158, 161 (Wyo.2010); *see also State ex rel. Arnold v. Ommen*, 2009 WY 24, ¶ 23, 201 P.3d 1127, 1134 (Wyo.2009) ("Summary judgment is appropriate in a declaratory judgment action so long as there are no genuine issues of material fact.").

We review a grant of summary judgment entered in response to a declaratory judgment action through our usual standard for review of summary judgments. *Arnold*, ¶ 13, 201 P.3d at 1132; *Voss*, ¶ 9, 203 P.3d at 419. Our review of a district court's summary judgment ruling is de novo, using the same materials and following the same standards as the district court. *Arnold*, ¶ 13, 201 P.3d at 1132; W.R.C.P. 56(c). No deference is accorded to the district court on issues of law, and we may affirm the summary judgment on any legal grounds appearing in the record. *Voss*, ¶ 9, 203 P.3d at 419. "The summary judgment can be sustained only when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law." *Id*. (quoting *Wyo. Cmty. Coll. Comm'n*, ¶ 11, 31 P.3d at 1247).

*City of Casper v. Holloway*, 2015 WY 93, ¶¶ 27-28, 354 P.3d 65, 73 (Wyo. 2015).

[¶14] Regarding our review of summary judgment in the interpretation of a contract, we have said:

The initial question of whether the contract is capable of being understood in only one way is a question of law for the court. If the court determines that the contract is capable of being understood in only one way, then the language used in the contract expresses and controls the intent of the parties. In such case, the next question, what is that understanding or meaning, is also a question of law. When we review the district court's summary judgment decisions that a contract is capable of being understood in only one way and what that understanding is, we accord no deference to those decisions.

5

*Leeks Canyon Ranch, LLC v. Callahan River Ranch, LLC*, 2014 WY 62, ¶ 12, 327 P.3d 732, 737 (Wyo. 2014) (quoting *Claman v. Popp*, 2012 WY 92, ¶ 23, 279 P.3d 1003, 1012 (Wyo. 2012)).

[¶15] The parties have confirmed the district court's observation that there are no questions of material fact in this case. Our review is therefore confined to questions of law: the district court's interpretation of the Purchase Agreement between Keizer and Mr. Black and the CWIC policies issued to Keizer.

## DISCUSSION

[¶16] An omnibus clause is "a provision in an insurance policy that extends liability coverage to persons who use the named insured's vehicle with his or her permission." 8 Steven Plitt, et al., *Couch on Insurance 3d* § 111:1 (2014). The commercial and umbrella policies CWIC issued to Keizer each contained an omnibus clause, which provides that an insured under the policy includes both the named insured, Keizer, and "[a]nyone else while using with your permission a covered 'auto' you [Keizer] own." Resolution of the insurance coverage question presented here depends upon our interpretation of this omnibus clause. In particular, we must determine the meaning of the terms *own* and *permission*, and whether Keizer, under the terms of its Purchase Agreement with Mr. Black, continued to own the trailer involved in the accident, and whether Mr. Black's possession and use of the trailer was with Keizer's *permission*, as that term is used in the omnibus clause.

## A. Governing Iowa Law

[¶17] The parties agree that the Purchase Agreement and the CWIC insurance policies are to be interpreted applying Iowa law.[1] The Iowa Supreme Court has outlined its governing principles for interpreting a contract:

> The cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract. *Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001). "Words and other conduct are interpreted in the light of all the circumstances, and if the principal

---

[1] Although Mr. Black's accident occurred in Wyoming, the Purchase Agreement entered into between Keizer and Mr. Black specifies that the agreement will be interpreted according to the laws of Iowa/Nebraska. Additionally, Mr. Black is a resident of Iowa and his business is organized under the laws of Iowa, with its principal place of business located in Iowa, and CWIC is a corporation organized under the laws of Iowa, with its principal place of business located in Iowa. Keizer is a corporation organized under the laws of South Dakota, with its principal place of business located in South Dakota, but based on its address as shown on its CWIC policies, Keizer also appears to have some presence in Iowa.

purpose of the parties is ascertainable it is given great weight." *Fausel v. JRJ Enters., Inc.*, 603 N.W.2d 612, 618 (Iowa 1999) (quoting Restatement (Second) of Contracts § 202(1) (1979)). Another relevant rule of contract interpretation requires that "[w]herever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade." Restatement (Second) of Contracts § 202(5) (1979).

These rules of interpretation are general in character and only serve as guides in the process of interpretation. Restatement (Second) of Contracts § 202 cmt. a (1979). The rules do not depend on a determination that there is an ambiguity, but we use them to determine "what meanings are reasonably possible as well as in choosing among possible meanings." *Fausel*, 603 N.W.2d at 618 (quoting Restatement (Second) of Contracts § 202 cmt. a (1979)).

Long ago we abandoned the rule that extrinsic evidence cannot change the plain meaning of a contract. *Hamilton v. Wosepka*, 261 Iowa 299, 313, 154 N.W.2d 164, 171–72 (1967). We now recognize the rule in the Restatement (Second) of Contracts that states the meaning of a contract "can almost never be plain except in a context." *Id.*; Restatement (Second) of Contracts § 212 cmt. b (1979). Accordingly,

> "[a]ny determination of meaning or ambiguity should only be made in the light of relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties. *But after the transaction has been shown in all its length and breadth, the words of an integrated agreement remain the most important evidence of intention.*"

*Fausel*, 603 N.W.2d at 618 (quoting Restatement (Second) of Contracts § 212 cmt. b (1979)) (emphasis in original).

7

In other words, although we allow extrinsic evidence to aid in the process of interpretation, ***the words of the agreement are still the most important evidence of the party's intentions at the time they entered into the contract***.

*Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa 2008) (emphasis added).

[¶18]  Regarding the interpretation of insurance policies in particular, the Iowa Supreme Court has explained:

> Our rules governing the construction and interpretation of insurance policies are well-settled. "The cardinal principle ... is that the intent of the parties at the time the policy was sold must control." *LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998). Except in cases of ambiguity, we determine "the intent of the parties by looking at what the policy itself says." *Boelman*, 826 N.W.2d at 501. If a term is not defined in the policy, we give the words their ordinary meaning. *Id*. "We will not strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase." *Id*.
>
> "[A] policy is ambiguous if the language is susceptible to two reasonable interpretations" when the contract is read as a whole. *Id*. "If the policy is ambiguous, we adopt the construction most favorable to the insured." *Id*. at 502. "An insurance policy is not ambiguous, however, just because the parties disagree as to the meaning of its terms." *Id*. Moreover, "'[a]mbiguity is not present merely because the provision "could have been worded more clearly or precisely than it in fact was."'" *Am. Family Mut. Ins. Co. v. Corrigan*, 697 N.W.2d 108, 114 (Iowa 2005) (quoting *Cairns v. Grinnell Mut. Reins. Co.*, 398 N.W.2d 821, 824 (Iowa 1987)). "If an insurance policy and its exclusions are clear, the court 'will not "write a new contract of insurance"' for the parties." *Boelman*, 826 N.W.2d at 502 (quoting *Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 682 (Iowa 2008)). We construe exclusions strictly against the insurer. *Id*. Nevertheless, "we must enforce unambiguous exclusions as written." *Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.*, 728 N.W.2d 216, 222 (Iowa 2007).

*Amish Connection Co.. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 236 (Iowa 2015); *see also State Farm Auto. Ins. Co. v. Malcolm*, 259 N.W.2d 833, 836 (Iowa 1977) ("An insurance policy is a contract of adhesion and therefore its provisions will be construed in a light most favorable to the insured.").

[¶19] The Iowa Supreme Court has further held that "[w]hen an insurer has 'affirmatively expressed coverage through broad promises, [it] assumes a duty to define any limitations or exclusionary clause in clear and explicit terms.'" *Farm Bureau Life Ins. Co. v. Chubb Custom Ins. Co.*, 780 N.W.2d 735, 742 (Iowa 2010) (quoting *Malcolm*, 259 N.W.2d at 835). When such definitions are not provided, Iowa courts find the ordinary meaning of the controlling terms using the following approach:

> When words are left undefined in a policy, we give them their ordinary meanings—meanings which a reasonable person would give them. *A.Y. McDonald*, 475 N.W.2d at 619. We do not typically give them meanings only specialists or experts would understand. *City of Spencer v. Hawkeye Sec. Ins. Co.*, 216 N.W.2d 406, 408–09 (Iowa 1974). In searching for the ordinary meanings of undefined terms in insurance policies we commonly refer to dictionaries. *See, e.g.*, *Witcraft v. Sundstrand Health & Disability Grp. Benefit Plan*, 420 N.W.2d 785, 788 (Iowa 1988) (meaning of "illness"); *N. Star Mut. Ins. Co. v. Holty*, 402 N.W.2d 452, 455 (Iowa 1987) (meaning of "apparatus"). If a word is susceptible to two interpretations, typically we adopt an interpretation favoring the insured. *A.Y. McDonald*, 475 N.W.2d at 619.

*Farm Bureau Life Ins. Co. v. Holmes Murphy & Assoc.*, 831 N.W.2d 129, 134 (Iowa 2013); s*ee also Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 502 (Iowa 2013) (citing *Steel Prods. Co. v. Millers Nat'l Ins. Co.*, 209 N.W.2d 32, 36 (Iowa 1973)) ("[W]e interpret the policy language from a reasonable rather than a hypertechnical viewpoint.").

## B.    Application of Iowa Law

### 1.    Ordinary Meaning of the Policy Terms

[¶20]  We begin our analysis by looking to the terms of the omnibus clause contained in Keizer's commercial and umbrella policies, which provides that an insured includes "[a]nyone else while using with your permission a covered 'auto' you [Keizer] own." Both the commercial and umbrella policies specify that words and phrases that appear in the policy in quotation marks have special meaning and are defined in the policy's definitions section. The words *own* and *permission*, as used in the omnibus clause, do not

appear in quotation marks in either policy and the policies do not otherwise define the terms. We, therefore, in keeping with the Iowa rules of policy interpretation, give those terms their ordinary meaning.

[¶21] The term *own* means "[t]o rightfully have or possess as property; to have legal title to." *Black's Law Dictionary* 1214 (9th ed. 2009). The term *permission* means "1. The act of permitting. 2. A license or liberty to do something; authorization." *Black's Law Dictionary* 1255 (9th ed. 2009). Based on the ordinary meaning of the terms *own* and *permission*, we agree with the district court's conclusions that Keizer owned the trailer involved in Mr. Black's accident and Mr. Black was using the trailer with Keizer's permission.

[¶22] With regard to Keizer's ownership of the trailer, the Purchase Agreement states in clear terms, in two separate provisions, that Keizer was to remain the owner of all three trailers until the trailers were paid for in full. There is no dispute that the trailer had not been fully paid for when the accident occurred, and in fact all three trailers have since the accident been returned to Keizer's possession.[2] Because the trailers were not fully paid for when the accident occurred, the trailers were, under the Purchase Agreement's plain terms, owned by Keizer.

[¶23] CWIC acknowledges the ordinary meaning of the omnibus clause terms and the Purchase Agreement's language concerning Keizer's ownership of the trailer, but it offers two reasons this Court should nonetheless find Mr. Black to be the trailer's owner. First, CWIC argues the transaction between Keizer and Mr. Black was a conditional sales agreement, and under this type of transaction, the law dictates that the buyer is the vehicle's owner. Second, CWIC argues that the Iowa owner consent statute applies and requires a finding that Mr. Black was the owner of the trailer involved in the accident.

---

[2] It is not clear from the record precisely when the three trailers were returned to Keizer or what the circumstances were of their return to Keizer. Mr. Black testified:

> Q.      Okay. And the trailers also under the separate contracts, those have been returned?
> A.      Everything's returned.
> Q.      And you're being sued on those?
> A.      No.
> Q.      Okay.
> A.      As far as I know to this point, Utility is not going to sue us. From what I understood from John, they pretty much sold them and broke even.
> Q.      Are we talking about [Keizer] now?
> A.      [Keizer], yes.
> * * *
> Q.      And [Keizer] has not sued you?
> A.      [Keizer] hasn't sued us. As of right now, I haven't – everything's pretty much evened out.

We will consider each of these arguments below, addressing first the contention that the transaction between Keizer and Mr. Black was a conditional sale and then turning to application of the Iowa owner consent statute.

## 2.    Conditional Sales Agreement

[¶24]   CWIC argues that if the Purchase Agreement is read as a whole, this Court must reach the conclusion that what the parties intended was to enter into a conditional sales agreement, whereby Keizer retained title to the trailers, not as an owner with the right to control Mr. Black's use of the trailers, but solely as a holder of a security interest. Because the Purchase Agreement is a conditional sales agreement, CWIC argues, the law recognizes that Mr. Black, the purchaser, was, at the time of the accident, the trailer's owner and was not a permissive user under the omnibus clause.  In support of this argument CWIC directs us to *Couch on Insurance*, which instructs:

> The rule pertaining to absolute sales is also applicable to conditional sales—the vendor is not regarded as giving permission to the vendee to operate the automobile, with the result that the vendor's insurer is not liable by virtue of the omnibus clause, because as long as the conditional vendee has the right to possession, he or she does not operate the car by the permission of the vendor.

8 Steven Plitt, et al., *Couch on Insurance 3d* § 112:15 (2014) (footnotes omitted); *see also* § 112:14 (footnote omitted) ("In essence, when the alleged permittee uses a vehicle not as the insured's vehicle covered by the insured's policy but as his or her own automobile, he or she is not using the covered automobile with the consent of the insured and is not an omnibus insured.").

[¶25]   While we recognize the effect of a conditional sales agreement on the applicability of an omnibus clause, we disagree that the Purchase Agreement entered into between Keizer and Mr. Black is a conditional sales agreement under Iowa law.  The Iowa Supreme Court has outlined the attributes of a conditional sales agreement:

> A conditional sale contract is actually a form of bailment and it is often difficult to distinguish it from a bailment for the purpose of sale. * * *
>
> * * * *
>
> 'The main distinction, or the most approved test, has been said to be that in a conditional sale there is a promise or agreement to pay, while in a bailment there is no such

11

promise or agreement, but the bailee may relieve himself of further liability by surrendering the property.' 8 C.J.S. *Bailments*, § 3(2) p. 328; *Bentley & Olmstead v. Snyder & Son*, 101 Iowa 1, 69 N.W. 1023, 1025; *Hansen v. Kuhn*, 226 Iowa 794, 285 N.W. 249; *Hull-Dobbs Motor Co. v. Associates Discount Corp.*, 241 Iowa 1365, 1369, 44 N.W.2d 403.

The Court has also said: 'To constitute a conditional sale, within the terms of the statute, there must be a delivery of possession to the purchaser, ***with the intention of passing immediate ownership, subject only to the reservation of title to the seller, as security for the purchase money*.'** *Firestone Tire & Rubber Co. v. Anderson*, 190 Iowa 439, 442, 180 N.W. 273, 274; *Greenlease-Lied Motors v. Sadler*, 216 Iowa 302, 249 N.W. 383; *Hansen v. Kuhn*, *ibid*; *Hull-Dobbs Motor Co. v. Associates Discount Corp.*, *ibid*.

*Industrial Credit Co. v. Hargadon Equipment Co.*, 119 N.W.2d 238, 241-42 (Iowa 1963) (emphasis added).

[¶26] On our review, we find that Keizer's arrangement with Mr. Black has attributes of both a bailment for purchase and a conditional sale. Consistent with the bailment for purchase, the Purchase Agreement's front page refers to the transaction as a "Lease to Purchase," with Keizer remaining the owner of the trailers "until the loan is paid in full." The reverse side of the Purchase Agreement reiterates that Keizer shall retain ownership of the trailers until paid for in full. Additionally, the Purchase Agreement contains no provision entitling Keizer to recover the entire purchase price upon a buyer default and sets forth only one remedy upon the buyer's default: "Buyer agrees that if he becomes more than two payments past due the trailers will be returned to one of our locations and all monies paid to date will be forfeited." The Purchase Agreement is thus consistent with a bailment in that Mr. Black could relieve himself from further liability under the agreement by simply returning the trailers to Keizer.

[¶27] On the other hand, Mr. Black also signed a separate promissory note, the terms of which required him to pay Keizer $81,946.64, with interest at a rate of 14% per annum, in thirty-six monthly installments. Unlike the Purchase Agreement, the promissory note does seem to embody an agreement to pay the entire purchase price, which if that is the case, would make the transaction look more like a conditional sale. The promissory note provides (our emphasis added):

12

> \* \* \* In the event any payment due hereunder is not made when due, ***the entire balance shall be immediately due and payable*** at the option of the holder.
>
> In the event of default, the undersigned agree to pay all reasonable attorney fees and costs of collection.

[¶28] We thus have two instruments that seem to be in conflict with each other. The Purchase Agreement specifies that it is a lease to purchase with a default by Mr. Black resulting only in return of the trailers and forfeiture of monies paid. The promissory note, on the other hand, allows Keizer to collect the entire amount promised should Mr. Black fail to make a payment when due. To the extent this Court must determine which of these documents should control in determining the character of the parties' transaction, we are inclined to look to the terms of the Purchase Agreement.

[¶29] First, it is entirely unclear what purpose is served by the promissory note. Keizer neither loaned Mr. Black the face amount of the promissory note nor transferred ownership of the trailers in exchange for the note. Moreover, there appears to be little relationship between the note and the Purchase Agreement. The note requires payment of an amount that is equal to the total purchase price of the trailers, but it does not reference either the Purchase Agreement or the trailers. The Purchase Agreement likewise does not incorporate the promissory note, and its only reference to the note is a provision specifying: "Buyer agrees to the payment schedule on the Promissory Note-Guaranty dated 12/27/2010." When the Purchase Agreement and the Promissory Note are read together, the Promissory Note would appear to do no more than memorialize the parties' agreed upon payment schedule.[3]

[¶30] When we look to the Purchase Agreement to define the character of the transaction between Keizer and Mr. Black, it is clear that the transaction was not a conditional sales agreement. As we noted above, two findings must be made to conclude that a transaction is a conditional sale: 1) the buyer must be obligated to pay the entire purchase price—as opposed to being able return the property and walk away from the deal without incurring further liability; and 2) there must be a delivery of possession coupled with an intention of passing immediate ownership. *Indus. Credit Co.*, 119 N.W.2d at 241-42. With respect to the first requirement, the Purchase Agreement imposes no obligation on Mr. Black to pay the entire purchase price of the trailers and allows him to relieve himself from further liability under that agreement by simply returning the trailers to Keizer. With respect to the second requirement, the Purchase Agreement reflects no intention to pass immediate ownership of the trailers to Mr. Black

---

[3] While we find the Purchase Agreement to be the controlling document for purposes of defining the character of the parties' transaction, the question of Keizer's rights under the promissory note is not a question before this Court. Our opinion should therefore not be construed to resolve the parties' obligations and rights under that document.

and in fact clearly expresses an opposite intention that Keizer shall retain ownership of the trailers.[4]

[¶31] Keizer's transaction with Mr. Black was neither a completed sale nor a conditional sale. Keizer therefore retained ownership of the trailers, and it follows that Mr. Black's use of the trailers was with Keizer's permission, making coverage available under the omnibus clauses of the CWIC policies:

> When the transaction is not a completed sale as between the parties themselves, the use of the vehicle by the prospective purchaser is not based on any right as an owner but solely on the permission granted by the insured owner, and the omnibus clause is operative.
> If the parties to the sales contract specifically agree that the title shall not be transferred until a later date, the seller may still grant permission during the time prior to the transferring of title.

8 Steven Plitt, et al., *Couch on Insurance 3d* § 112:16 (2014) (footnotes omitted); *see also State Farm Mut. Auto. Ins. Co. v. Liverett*, 475 F.2d 188, 189 (5th Cir. 1973) (holding ownership remained in seller where buyer had possession of vehicle but there had been no transfer of title and vehicle remained registered in seller's name); *Benton v. State Farm Mut. Auto. Ins. Co.*, 306 F.2d 179, 181 (6th Cir. 1962) (finding no completed sale and holding ownership remained in seller where buyer took possession of vehicle with understanding that seller retained ownership and title until full payment and seller had right to repossess vehicle at any time.).

### 3. Application of Iowa Owner Consent Statute

[¶32] CWIC next argues that the term *own*, as used in the omnibus clause, should be defined in keeping with the requirements of Iowa's owner consent statute, which defines an owner of a vehicle to mean a person to whom the certificate of title has been assigned as well as the following:

---

[4] The Purchase Agreement states, in two separate provisions, that Keizer shall remain the owner of the trailer, and the agreement contains no language limiting that ownership to only a security interest. Additionally, Keizer did not file a security statement, and it continued to behave as if it owned the trailers. It retained title to the trailers, registered the trailers in its name, and paid for the plating of the trailers. It also listed the trailers on its CWIC policies under the "Schedule of Covered Autos You Own," which counsel for CWIC confirmed during oral argument was an intentional listing to provide coverage for losses such as damage to the trailers themselves or claims relating to damages caused by defects in a trailer. As the district court observed, the listing of the trailers in the CWIC policies does not in itself establish Keizer's ownership of the trailers, but it does provide further confirmation of Keizer's intention to retain ownership of the trailers.

(1) the lessee under a written lease for a period of twelve months or more with a lessor to whom the certificate of title has been issued, (2) a debtor in possession of a vehicle pursuant to a security agreement, and (3) a purchaser or a transferee of a vehicle who has received delivery of the vehicle under a bona fide sale or transfer. Iowa Code §§ 321.493(1)(a), 321.1(49), 321.493(2).

*Beganovic v. Muxfeldt*, 775 N.W.2d 313, 320 (Iowa 2009). We reject this argument for a number of reasons.

[¶33] As we noted above, the terms of an insurance policy generally are to be given their ordinary meaning. *Farm Bureau Life Ins. Co.*, 831 N.W.2d at 134; *see also LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998) ("When words or phrases are undefined in a policy we do not give them a technical or legal meaning. Rather, undefined words are given their ordinary meaning."). The Iowa Supreme Court has recognized, however, that there are circumstances where an insurance policy should be read in conjunction with governing statutes:

> Notwithstanding the principle that the meaning of an insurance contract is generally determined from the language of the policy, statutory law may also affect our interpretation of policy provisions. In discussing the application and effect of Iowa's uninsured/underinsured motorist statute, chapter 516A, this court has stated:
>
>> A statute that authorizes a contract of insurance has application beyond merely permitting or requiring such a policy. The statute itself forms a basic part of the policy and is treated as if it had actually been written into the policy. The terms of the policy are to be construed in light of the purposes and intent of the applicable statute.
>
> *Tri-State Ins. Co. v. De Gooyer*, 379 N.W.2d 16, 17 (Iowa 1985) (citations omitted). Consequently, when a policy provision conflicts with a statutory requirement, the policy provision is ineffective and the statute controls. *Matthess v. State Farm Mut. Auto. Ins. Co.*, 548 N.W.2d 562, 564 (Iowa 1996).

*Lee v. Grinnell Mut. Reinsurance Co.*, 646 N.W.2d 403, 406 (Iowa 2002).

[¶34] *Lee* defines the circumstances under which a statutory definition or requirement should be considered in interpreting an insurance contract, and those circumstances do

not exist in this case. First, the statutory definition that CWIC has asked this Court to read into the policies it issued Keizer is drawn from the Iowa owner consent statute, not a statute authorizing insurance contracts or governing the coverage that an insurance contract must provide.[5] Because the owner consent statute does not govern insurance contracts and the scope of their coverage, the statute does not reflect the same legislative intent to have the statutory terms read into an insurance policy that was present in the *Lee* case.

[¶35] Second, the rule of interpretation announced in *Lee* gives a statutory requirement or definition primacy only where there is a conflict between the statute and the insurance policy in question. There is no such conflict between the CWIC policies and the owner consent statute on which CWIC relies because the owner consent statute does not apply to trailers. *See Zimmer v. Vander Waal*, 780 N.W.2d 730, 734-35 (Iowa 2010) (holding that trailer is not a motor vehicle as defined by owner consent statute and is therefore not governed by statute). Because no conflict exists between the owner consent statute and the CWIC policies, there is no requirement that the CWIC policies be supplemented with that statute's definitions.

[¶36] The circumstances in this case do not warrant application of the statutory definitions urged by CWIC, and the policies themselves do not incorporate those statutory definitions. We shall therefore give the omnibus clause terms their ordinary meaning.

[¶37] Keizer retained ownership of the trailers through its Purchase Agreement with Mr. Black, and through that same agreement, it gave Mr. Black permission to take possession of and use the trailers. If this transaction reflects ownership and permission that is not of the type CWIC intended to have covered by the omnibus clause of the policies it sold to Keizer, a company that sells trailers as its business, it was incumbent upon CWIC to have made that clear in the terms of the policies. *See Farm Bureau Life Ins. Co.*, 780 N.W.2d at 742 (quoting *Malcolm*, 259 N.W.2d at 835) ("When an insurer has 'affirmatively expressed coverage through broad promises, [it] assumes a duty to define any limitations or exclusionary clause in clear and explicit terms.'"); s*ee also Stahly Cartage Co. v. Universal Mut. Cas. Co.*, 138 N.E.2d 243, 244 (Ill. App. 1956) (noting policy provision that excluded coverage for any vehicle "subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy"). Applying the ordinary meaning of the terms *own* and *permission*, coverage is available under the omnibus clause of the policies CWIC issued to Keizer.

---

[5] The Iowa owner consent statute, governs an owner's vicarious liability for damages caused by a person who uses the owner's vehicle with the owner's consent. *Beganovic v. Muxfeldt*, 775 N.W.2d 313, 318 (Iowa 2009).

16

## CONCLUSION

[¶38]   The transaction between Keizer and Mr. Black was neither a completed sale nor a conditional sale.  Keizer therefore retained ownership of the trailers, and Mr. Black's use of the trailers was with Keizer's permission, making coverage available under the omnibus clauses of Keizer's CWIC policies.  Affirmed.